1  ROBBINS ARROYO LLP
2  BRIAN J. ROBBINS (190264)
   brobbins@robbinsarroyo.com
3  STEPHEN J. ODDO (174828)
   soddo@robbinsarroyo.com
4  600 B Street, Suite 1900
   San Diego, CA 92101
5  Telephone: (619) 525-3990
6  Facsimile: (619) 525-3991

7  [Additional Counsel on Signature Page]

8  Attorneys for Plaintiff

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         WESTERN DIVISION

12

13  DENNIS PALKON, on Behalf of      )   Case No. 2:16-cv-4168
    Himself and All Others Similarly )
    Situated,                        )   CLASS ACTION
14                                   )   _____
                                     )
15              Plaintiff,           )
                                     )   COMPLAINT FOR VIOLATIONS
16      v.                           )   OF THE FEDERAL SECURITIES
                                     )   LAWS AND BREACH OF
17  HOWARD G. PHANSTIEL,             )   FIDUCIARY DUTIES
    ROBERT BERGLASS, JAMES T.        )
18  ARMSTRONG, KENNETH L.            )
    COLEMAN, CAROL A. SCOTT,         )
19  ANDREW D. MILLER, KENNETH        )
    D. DENMAN, B. RILEY              )
20  FINANCIAL, INC., and             )
    UNIFY MERGER SUB, INC.,          )
21                                   )
                                     )
22              Defendants.          )
                                     )
23  _____)

24

25

26

27

28

Plaintiff Dennis Palkon ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following upon information and belief, including the investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1.     This is a stockholder class action brought by Plaintiff on behalf of the public stockholders of United Online, Inc. ("United Online" or the "Company") against the Company's Board of Directors (the "Board" or the "Individual Defendants"), B. Riley Financial, Inc. ("B. Riley"), and Unify Merger Sub, Inc. ("Merger Sub") (the Board, B. Riley, and Merger Sub are collectively referred to herein as the "Defendants").  This action seeks to enjoin the Individual Defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at an unfair price through an unfair process (the "Proposed Acquisition").

2.     Defendants announced on May 4, 2016, that the Board had agreed to enter into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which B. Riley will acquire all of United Online's common stock for $11 per share in cash (the "Proposed Consideration") in a transaction valued at approximately $170 million.  The consideration represents approximately $48 million in cash consideration from B. Riley after taking into account the projected United Online cash balance at closing.

3.     United Online was formed in 2001 by the merger of two internet service providers, NetZero, Inc. ("NetZero") and Juno Online Services, Inc. ("Juno").  Since the Company's inception as a provider of dial-up internet access, United Online's range of products and services has evolved significantly.  The Company now has more than 100 million registered accounts in its communications segment, networking services and products, and loyalty

marketing.  United Online also has no debt and $104.8 million cash.

4.     Over the course of 2015, United Online undertook a series of actions to streamline its segments and focus, as well as enhance the overall financial performance of the Company.  By the end of the year, B. Riley offered to acquire all of the outstanding shares of United Online common stock to $13.25 per share.  Shortly thereafter, in February 2016, the Company announced its fourth quarter and full year 2015 financial results which demonstrated the success of its streamlining efforts with a 102% increase in operating income from $3.5 million in 2014 to $7.1 million.  Despite the fact that the Company was demonstrably improving throughout the negotiations, the Board ultimately agreed to sell Untied Online to B. Riley for a mere $11 per share.

5.     The Individual Defendants are attempting to prevent Plaintiff and the Class (as defined herein) from realizing the benefits of the Company's streamlined operations and bright future by inexplicably deciding to sell United Online now in exchange for the grossly inadequate Proposed Consideration—thus breaching their fiduciary duty to maximize stockholder value in connection with the Proposed Acquisition.  The inadequacy of the Proposed Consideration is particularly evident when considering that before the deal was announced at least two market analysts set target prices for United Online stock significantly higher than the offer price of $11, including B. Riley & Co., which has had a $19 target since November 2015.

6.     In addition, the Proposed Acquisition is rife with significant conflicts of interest.  For example, all Board members will receive accelerated vesting of unvested options collectively worth more than a half of a million dollars, and the Company's Chief Executive Officer ("CEO"), Jeffrey Goldstein ("Goldstein"), will receive an additional $1.1 million in change in control benefits.

7.     In order to lock up the Proposed Acquisition on unfair terms, the Board adopted various preclusive and onerous deal protection devices, which are set forth in the Merger Agreement dated May 4, 2016.  These provisions, which

collectively preclude any competing offers for the Company from emerging, include: (i) a termination fee totaling nearly $2.7 million if the Company accepts a competing bid, representing approximately 5.6% of the $48 million cash consideration value of the Proposed Acquisition; (ii) a "no-solicitation" clause; and (iii) a four day matching rights period during which B. Riley can match any superior proposal received by the Company.   These provisions unreasonably inhibit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of United Online.

8.     Worse, in an attempt to secure stockholder support for the inadequate Proposed Acquisition, on June 1, 2016, Defendants filed a Proxy Statement on Form DEF 14A (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC").   The Proxy, which recommends that United Online stockholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the financial analysis and projections provided by the Company and its financial advisors, in contravention of sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

9.     In short, the Proposed Acquisition is designed to unlawfully divest United Online stockholders of the Company's valuable assets for grossly inadequate consideration and without fully disclosing all material information concerning the transaction to stockholders.   Plaintiff seeks injunctive relief preventing consummation of the Proposed Acquisition, unless and until Defendants' Exchange Act violations are appropriately remedied.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the claims asserted herein for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.   This Court has supplemental jurisdiction under 28 U.S.C. §1367.

11.     This Court has jurisdiction over each defendant because each

defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because United Online's headquarters are located at 21255 Burbank Boulevard, Suite 400, Woodland Hills, California.

## THE PARTIES

**Plaintiff**

13.     Plaintiff is and has been a stockholder of United Online at all times relevant hereto.

**Non-Defendant**

14.     Non-defendant United Online is a Delaware corporation with principal executive offices located at 21255 Burbank Boulevard, Suite 400, Woodland Hills, California.   United Online, through its operating subsidiaries, provides consumer services and products over the Internet under a number of brands, including NetZero, Juno, MyPoints.com, Inc. ("MyPoints"), StayFriends GmbH ("StayFriends"), and Trombi Acquisition SARL ("Trombi").   United Online reports their businesses in three reportable segments: (i) Communications, which includes Internet access services and devices; (ii) Commerce & Loyalty, which includes loyalty marketing services, shopping through online portals, apps and browser extensions; and (iii) Social Media, which includes social networking services and products.   As of December 31, 2015, United Online had 384 employees.   Upon completion of the Proposed Acquisition, United Online will become a wholly-owned subsidiary of defendant B. Riley.

**Defendants**

15.     Defendant Howard G. Phanstiel ("Phanstiel") is United Online's Chairman of the Board and has been since November 2013, and a director and has

been since October 2008.  Defendant Phanstiel was also a director with Classmates Media Corporation ("Classmates Media"), a wholly owned subsidiary of United Online, from September 2007 to January 2010.  In connection with the Proposed Acquisition, defendant Phanstiel entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement

16.   Defendant Robert Berglass ("Berglass") is United Online's Lead Independent Director and has been since February 2006, and a director and has been since September 2001.  Defendant Berglass was also a director of Classmates Media, a wholly owned subsidiary of United Online, from September 2007 to January 2010.  Defendant Berglass was also a director of NetZero from November 2000 to September 2001.  In connection with the Proposed Acquisition, defendant Berglass entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement.

17.   Defendant James T. Armstrong ("Armstrong") is a United Online director and has been since September 2001.  Previously, defendant Armstrong was a director of NetZero from 1998 to September 2001.  In connection with the Proposed Acquisition, defendant Armstrong entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement.

18.   Defendant Kenneth L. Coleman ("Coleman") is a United Online director and has been since September 2001.  Previously, defendant Coleman was a director of Classmates Media, a wholly owned subsidiary of United Online, from September 2007 to January 2010.  In connection with the Proposed Acquisition, defendant Coleman entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement.

19.    Defendant Carol A. Scott ("Scott") is a United Online director and has been since April 2003.  Previously, defendant Scott was a director of Classmates Media, a wholly owned subsidiary of United Online, from September 2007 to January 2010.   In connection with the Proposed Acquisition, defendant Scott entered into a voting agreement with defendant B. Riley and has agreed to vote her shares of United Online stock in favor of the adoption of the Merger Agreement.

20.    Defendant Andrew D. Miller ("Miller") is a United Online director and has been since July 2014.  In connection with the Proposed Acquisition, defendant Miller entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement.

21.    Defendant Kenneth D. Denman ("Denman") is a United Online director and has been since June 2015.  In connection with the Proposed Acquisition, defendant Denman entered into a voting agreement with defendant B. Riley and has agreed to vote his shares of United Online stock in favor of the adoption of the Merger Agreement.

22.    Defendant B. Riley is a Delaware corporation with principal executive offices located at 21860 Burbank Boulevard, Suite 300 South, Woodland Hills, California.  Defendant B. Riley and its subsidiaries provide collaborative financial services.   For financial reporting purposes defendant B. Riley classifies its businesses into three segments: (i) Capital Markets, which provides investment banking, corporate finance, research, wealth management, sales, and trading services to corporate, institutional, and high net worth clients; (ii) Auction and Liquidation, which utilizes industry experience, a network of independent contractors and advisors to tailor their services to numerous clients, logistical challenges, and distressed circumstances; and (iiI) Valuation and Appraisal, which provides valuation and appraisal services to financial institutions, lenders, private equity firms, and other providers of capital.

23.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of defendant B. Riley.  Upon completion of the Proposed Acquisition, defendant Merger Sub will merge with and into United Online and cease its separate corporate existence.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other public stockholders of United Online that have been or will be harmed by Defendants' conduct described herein (the "Class").  Excluded from the Class are Defendants and any individual or entity affiliated with any Defendant.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, there are over 14.9 million shares of United Online common stock outstanding as of April 22, 2016.

27.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include the following:

(a)     whether Defendants have violated sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder by disseminating a materially false and misleading Proxy to United Online stockholders;

(b)     whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(c)     whether Defendants are unjustly enriching themselves and other insiders or affiliates of the Company at the expense of United Online stockholders and/or their fiduciary obligations; and

(d)     whether Plaintiff and the other members of the Class would be

1    irreparably harmed were the transactions complained of herein consummated.

2        28.    Plaintiff's claims are typical of the claims of the other members of the

3    Class and Plaintiff does not have any interests adverse to the Class.

4        29.    Plaintiff is an adequate representative of the Class, has retained

5    competent counsel experienced in litigation of this nature, and will fairly and

6    adequately represent and protect the interests of the Class.

7        30.    The prosecution of separate actions by individual members of the

8    Class would create a risk of inconsistent or varying adjudications with respect to

9    individual members of the Class that would establish incompatible standards of

10   conduct for the party opposing the Class.

11       31.    Plaintiff anticipates that there will be no difficulty in the management

12   of this litigation.  A class action is superior to other available methods for the fair

13   and efficient adjudication of this controversy.

14       32.    Defendants have acted, or failed to act, on grounds generally

15   applicable to the Class with respect to the matters complained of herein, thereby

16   making appropriate the relief sought herein with respect to the Class as a whole.

17                          **THE FLAWED SALES PROCESS**

18       33.    As set forth in the Proxy, the Proposed Acquisition is the result of a

19   flawed process that was tilted in favor of B. Riley from the outset.

20       34.    The sales process began in mid- to late-2014 while United Online was

21   evaluating various potential transactions, including acquiring certain potential

22   targets or selling certain of its subsidiaries or the business as a whole.

23       35.    On October 7, 2015, shortly after United Online completed the sale of

24   one of its subsidiaries, Classmates, Inc., B. Riley met with United Online

25   management to discuss, among other things, potential strategic opportunities that

26   the Company might pursue.  Within a week of the meeting, United Online retained

27   ACXIT Capital Partners ("ACXIT") to assist in the potential sale of the Company's

28   StayFriends business.

36.   On November 1, 2015, the Company determined to engage JMP Securities LLC ("JMP Securities") as exclusive financial advisor to assist in potential acquisitions and evaluate the potential sale of the Company's MyPoints business units.

37.   On November 3, 2015, for undisclosed reasons, Francis Lobo, the Company's former CEO, President, and a director resigned, effective November 18, 2015.  In response, the Board quickly appointed defendant  Phanstiel, who was then serving as Chairman of the Board, as United Online's new Principal Executive Officer, effective November 18, 2015.

38.   Immediately after Mr. Lobo's resignation announcement and prior to defendant Phanstiel's effective start date, defendant Phanstiel and Bryant R. Riley ("Mr. Riley") began engaging in several discussions concerning the potential sale of United Online to B. Riley.  Pursuant to these discussions, on November 16, 2015, B. Riley delivered a letter to the Board offering to enter into a negotiated transaction and suggested a potential offer price of $12.50 per share.

39.   Two days after B. Riley's initial offer, on November 18, 2015, defendant Phanstiel effectively became the Company's Principal Executive Officer. The same day, defendant Phanstiel and Mr. Riley began discussing potential candidates for directorship on the go-forward board.

40.   During the remainder of 2015, representatives from both companies, including defendant Phanstiel and Mr. Riley, continued to discuss potential transactions on numerous occasions, including B. Riley's purchase of the Company and the Company's sale of certain of its businesses.  During the same time, United Online contacted various parties concerning the potential sales of the Company's communications business, MyPoints, and/or StayFriends.

41.   On December 3, 2015, B. Riley raised its offer to acquire all of the outstanding shares of United Online common stock to $13.25 per share.

42.   On December 8, 2015, a company referred to in the Proxy as

"Company A" submitted a proposal to acquire United Online's communication business.  The Proxy does not disclose the value of Company A's offer.

43.    In January 2016, the Company received various non-binding indications of interest from various companies to acquire certain of United Online's businesses and subsidiaries.

44.    On January 11, 2016, United Online announced that the Board had appointed Goldstein as United Online's Interim CEO, effective the same day.  In connection with Goldstein's appointment, defendant Phanstiel resigned as Principal Executive Officer but continued as Chairman of the Board.

45.    Amidst the flurry of changes at United Online, on January 29, 2016, B. Riley lowered its non-binding offer from $13.25 to $12.50 per share, citing concerns about MyPoints and the mobile broadband business.  A few days later, on February 3, 2016, B. Riley again lowered its non-binding offer, this time from $12.50 to $12.43, noting that United Online would need to incur additional costs for its Interim CEO to conduct the sale process.

46.    The day after B. Riley lowered its offer for the second time in a week, on February 4, 2016, Company A made a non-binding offer to acquire United Online for a purchase price ranging from $12.50 to $13.15 per share of United Online stock.  Company A, however, later withdrew the offer to pursue a different strategic direction.

47.    On February 17, 2016, United Online released its fourth quarter and full year 2015 earnings.  Impressively, the Company's operating income increased to $7.1 million, an increase of 102% from $3.5 million in 2014.

48.    Through February and March 2016, United Online continued discussions with B. Riley for the sale of the Company while United Online discussed potential sales of the Company's subsidiaries with certain other parties.

49.    On March 11, 2016, B. Riley revised its offer to purchase United Online to $49.5 million (not including the amount of cash held by United Online).

This price assumed that all of United Online's business units, including MyPoints and the StayFriends and mobile broadband businesses, but not the rest of the communications businesses, were sold, and that the net proceeds of the divestitures were distributed to United Online's stockholders.

50.   On March 31, 2016, as B. Riley had demanded as a prerequisite to its purchase of the Company, United Online entered into an agreement to sell its StayFriends business for approximately sixteen million Euros in cash.

51.   The following day, on April 1, 2016, B. Riley submitted a revised non-binding offer to acquire United Online's communications business for $45 million, nearly $5 million less than its offer from the previous month.

52.   On April 9, 2016, United Online entered into a three week exclusivity agreement with B. Riley.

53.   On April 12, 2016 as B. Riley had demanded as a prerequisite to its purchase of the Company, United Online announced its sale of MyPoints for $13 million in cash.

54.   On April 28, 2016, United Online traded above the $11 Proposed Consideration, trading as high as $11.07 and closing at $10.71.

55.   Ultimately, on May 4, 2016, the parties finalized the Merger Agreement pursuant to which B. Riley will acquire all of United Online's common stock for $11 per share in cash, nearly 14% lower than B. Riley's initial offer price.

### THE PROPOSED ACQUISITION AND
### PRECLUSIVE MERGER AGREEMENT

56.   On May 4, 2016, United Online issued a press release announcing the Proposed Acquisition.  The press release stated, in relevant part:

WOODLAND HILLS, Calif., May 04, 2016 (GLOBE NEWSWIRE)

United Online, Inc. (NASDAQ:UNTD) ("Company") today announced a definitive agreement under which B. RileyFinancial, Inc. and certain of its affiliates (NASDAQ:RILY) ("B. Riley") will acquire

all of United Online's common stock for approximately $170 million in cash or $11.00 per share.

"The sale of United Online to B. Riley represents the culmination of an extensive process through which our Board of Directors explored the full range of strategic alternatives to maximize value for stockholders of United Online," said Jeff Goldstein, Interim Chief Executive Officer of United Online. "The transaction will allow our remaining operating business, the communications segment, to continue under B. Riley and will allow us to provide the stockholders of United Online with cash for their shares at closing."

The Board of Directors' comprehensive review process included an assessment of the strategic alternatives available to the Company, including an evaluation of the prospective time frame, the projected amount of capital investment, and additional operating and market risks associated with strategies to undertake acquisitions or other investments to return the Company to growth and, ultimately, to create additional stockholder value. In this process, the Board retained JMP Securities LLC to act as its exclusive financial advisor. Over a six-month period, the Company and its advisors contacted numerous potential financial and strategic buyers.

"The Board believes this competitive sales process resulted in the best available value to stockholders, compared with alternatives that would include investing cash to grow the now-smaller public company and its dialup business," added Mr. Goldstein. "Our rigorous process enabled us to maximize the sales prices of our assets culminating with our auction process for the communications segment."

57.    On May 5, 2016, the Company filed a Current Report on Form 8-K with the SEC wherein it disclosed the Merger Agreement.  The Merger Agreement

contains a number of draconian deal protection devices designed to preclude any competing bids for United Online from emerging in the period following the announcement of the Proposed Acquisition, which effectively locked-up the deal in favor of B. Riley.  As the Individual Defendants were duty bound to maximize stockholder value in connection with the Proposed Acquisition, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

58.    Under the Merger Agreement, United Online is subject to a "no-solicitation" clause that prohibits the Company from seeking a superior offer for its stockholders.   Specifically, section 5.4(a) of the Merger Agreement states, in pertinent part:

(a) During the Pre-Closing Period, the Company shall, and shall cause the Company Subsidiaries and the Company Representatives (other than Company Representatives that are not directors, officers or employees, which the Company shall instruct and use commercially reasonable efforts to cause) to, (i) cease and cause to be terminated any existing solicitation, encouragement, discussion or negotiation with any Third Party that may be ongoing with respect to an Acquisition Proposal, and (ii) request any such Third Party to promptly comply with its obligations under the applicable confidentiality agreement to return or destroy all confidential information concerning the Company and the Company Subsidiaries. Subject to Section 5.4(b), during the Pre-Closing Period, the Company shall not, and shall cause the Company Subsidiaries and the Company Representatives (other than Company Representatives that are not directors, officers or employees, which the Company shall instruct and use commercially reasonable efforts to cause) not to (x) solicit, initiate, or knowingly facilitate or encourage any inquiry, discussion,

offer, proposal or request that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal, (y) engage in, enter into, continue or otherwise participate in any discussions or negotiations with, or furnish any non-public information relating to the Company or any Company Subsidiary to, or afford access to the books or records or officers of the Company or any Company Subsidiary to, any Third Party with respect to an Acquisition Proposal or (z) otherwise knowingly facilitate any effort or attempt to make an Acquisition Proposal.

59.     Although the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision would require a potential acquiror to first make an unsolicited offer.  Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer that the Company reasonably expects to lead to a superior deal, no other bidders will emerge to make a superior proposal.

60.     Furthermore, under section 5.4(d) of the Merger Agreement, should it receive an unsolicited bid, the Company must notify B. Riley of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, B. Riley is granted four days to negotiate with the Company and allow B. Riley to amend the Merger Agreement so that the unsolicited bid is no longer superior.

61.     Finally, pursuant to section 7.2 of the Merger Agreement, United Online must pay B. Riley a nearly $2.7 million termination fee if it accepts a superior proposal.  This payment represents approximately 5.6% of the $48 million cash consideration value of the Proposed Acquisition and significantly increases the amount that a competing bidder would have to offer to acquire the Company before it would even potentially qualify as a superior proposal under the Merger Agreement.

62.     These onerous and preclusive deal protection devices, which will operate to unreasonably deter and discourage superior offers from other interested parties, were agreed to by the Individual Defendants to help secure the personal benefits and unfair profits afforded to them.  By negotiating for such personal benefits in connection with the consummation of the Proposed Acquisition, the Individual Defendants placed their own personal interests before those of the Company's stockholders thus resulting in the Proposed Acquisition being presented to United Online stockholders at an untenable and inadequate offer price.

**DEFENDANTS' INTERESTS IN THE PROPOSED ACQUISITION**

63.     The Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.  For example, as shown in the below table, each of the Individual Defendants will receive accelerated equity benefits from the Proposed Acquisition totaling over a million dollars:

| Defendant | Common Share Consideration | Accelerated Consideration | Total Merger Consideration |
|---|---|---|---|
| Howard G. Phanstiel | $ 414,535.00 | $ 103,532.00 | $ 518,067.00 |
| James T. Armstrong | $ 213,598.00 | $ 78,518.00 | $ 292,116.00 |
| Robert Berglass | $ 189,629.00 | $ 78,518.00 | $ 268,147.00 |
| Kenneth L. Coleman | $ 343,310.00 | $ 78,518.00 | $ 421,828.00 |
| Kenneth D. Denman | - | $ 78,518.00 | $ 78,518.00 |
| Andrew D. Miller | $ 73,535.00 | $ 78,518.00 | $ 152,053.00 |
| Carol A. Scott | $ 48,752.00 | $ 78,518.00 | $ 127,270.00 |
| **Total** | **$ 1,283,359.00** | **$ 574,640.00** | **$ 1,857,999.00** |

64.     In addition to the above, Goldstein will receive over $1.1 million in change in control benefits as a result of the Proposed Acquisition.  By negotiating for such personal benefits in connection with the consummation of the Proposed Acquisition, the Individual Defendants placed their own personal interests before those of the Company's stockholders thus resulting in the Proposed Acquisition

being presented to United Online stockholders at an untenable and inadequate offer price.

**THE PROPOSED ACQUISITION UNDERVALUES UNITED ONLINE**

65.     The Individual Defendants' fiduciary duties require them to maximize stockholder value when entering into a change-in-control transaction such as the Proposed Acquisition.  Here, however, the Individual Defendants' eagerness to enter into an acquisition with B. Riley (and secure the aforementioned personal financial benefits for which they had negotiated) resulted in a sales process that was not designed to obtain the maximum price for United Online stockholders.  As a result, the Company's public stockholders have been, and will continue to be, denied the fair process and arm's-length negotiated terms to which they are entitled to in a sale of their Company.  Indeed, the Proposed Consideration does not reflect the true inherent value of the Company as known to the Individual Defendants and B. Riley.

66.     As an initial matter, the Company received several proposals during the sales process indicating that the ultimately agreed upon $11 per share Proposed Consideration undervalued United Online.  Indeed, between November 2015 and March 2016, B. Riley made multiple proposals ranging from $12.50 per share to $13.25 per share, while Company A indicated that it would be willing to pay between $12.50 and $13.15 per share.  Further, in February 2016, the Company released its fourth quarter and full year 2015 financials, which included a 102% increase in operating income.  The increase not only exceeded guidance range, it also indicated that the Company was on track with its segment streamlining and focus, as well as its efforts enhance the overall financial performance of the Company.

67.     The inadequacy of the Proposed Consideration is further highlighted by the targets set by various analysts.  In the last several months prior to the announced merger, at least two analysts set targets well-above the $11 per share

offer price, including B. Riley & Co.  On November 4, 2015, B. Riley & Co. set a target price for United Online of $19 per share, which it maintained through the date of the Merger Agreement.  On April 6, 2016, Benchmark Company LLC set a target of $19.50 and the same target until the date of the Merger Agreement.

68.    Unfortunately for the Company's stockholders, the Board approved the Proposed Acquisition at a meager price of $11 per share.

## THE FALSE AND MATERIALLY MISLEADING PROXY

69.    In order to secure stockholder approval of the unfair Proposed Acquisition, defendants filed the false and materially misleading Proxy with the SEC on June 1, 2016.  The Proxy misrepresents and/or omits material information necessary for United Online stockholders to make an informed decision whether to vote in favor of the Proposed Acquisition.  Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information and/or provides them with materially misleading information concerning the financial projections and valuation analysis prepared by the Company and its financial advisor.

**Disclosure Deficiencies Concerning the Financial Projections Provided by United Online Management and Relied upon by JMP Securities**

70.    According to the Proxy, JMP Securities was provided with, and relied significantly upon, certain financial forecasts prepared by management for United Online.  The Proxy does not, however, disclose certain highly material aspects of these various sets of projections that are material to Company stockholders' decision whether to approve the Proposed Acquisition, including:

(a)    revenue (2nd half of 2016);

(b)    cost of revenue (2nd half of 2016);

(c)    other operating expenses (2nd half of 2016);

(d)    restructuring and other exit costs (2nd half of 2016);

(e)    transaction related costs (2nd half of 2016);

(f)     adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") (2nd half of 2016);

(g)     taxes (2016);

(h)     capital expenditures (2016);

(i)     changes in net working capital (2016); and

(j)     unlevered free cash flow (2016).

The Proxy also fails to disclose management's rationale for other operating expenses and stock-based compensation increasing as a percent of revenues over the projection period, management's rationale for net working capital requirements being a cash drain over the projection period, and the decrease in revenue attributable to over the projection period.

71.     The failure to include this material information in the Proxy renders the Proxy false and/or misleading as this information is integral to stockholders' evaluation of the consideration being offered in the Proposed Acquisition.  Indeed, these financial projections provide a sneak peek into United Online's expected future performance (i.e., growth/profitability) and, consequently, its value as a standalone entity.  More importantly, however, this expected performance is more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management who have their fingers on the pulse of the Company.  Accordingly, it is no surprise that financial projections are among the most highly sought after disclosures by stockholders in the context of corporate transactions such as this.

**Disclosure Deficiencies Concerning the Valuation Analysis Prepared by JMP Securities**

72.     The Proxy cites to and annexes the opinion of United Online's financial advisor JMP Securities, which concludes that the consideration to be received by United Online stockholders in the Proposed Acquisition is fair, from a financial point of view.  However, the Proxy fails to disclose material information

about JMP Securities' opinion and methodology, rendering it impossible for Company stockholders to effectively evaluate, and determine how to vote with respect to, the Proposed Acquisition.

73.     The description of JMP Securities' *Discounted Cash Flow Analysis* on pages 52-53 of the Proxy is materially deficient because it fails to disclose:

(a)     the definition of "unlevered free cash flow" utilized by JMP Securities in its analysis;

(b)     the individual inputs and assumptions utilized by JMP Securities to derive the discount rate range of 13.25% - 17.25%; and

(c)     How JMP Securities incorporated all the value of United Online's net operating losses in this analysis.

74.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 52-53 of the Proxy:

Using the Forecast, JMP Securities performed a discounted cash flow analysis on United Online to determine a range of present values per share of United Online common stock. JMP Securities conducted its discounted cash flow analysis by applying discount rates ranging from 13.25% to 17.25%, reflecting estimates of United Online's weighted average cost of capital, to estimated unlevered free cash flows of United Online for the period from June 30, 2016 to December 31, 2020, assuming the mid-year convention. JMP Securities then derived a range of terminal values by applying a range of exit multiples of 3.0x to 5.0x to United Online's estimated terminal year EBITDA, which was based on JMP Securities' professional judgment, and discounting such terminal values to June 30, 2016, using the same range of discount rates as described above. JMP Securities derived a range of present values of operational free

cash flows for United Online by adding the range of present values it derived above for the period from June 30, 2016 through December 31, 2020 to the range of present values of the terminal values it derived as described above. JMP Securities then divided such present values of operational free cash flows by the estimated number of shares of United Online common stock outstanding on a fully diluted basis as of June 30, 2016, based on information provided by management of United Online, to calculate a range of present value of operational free cash flows per share. JMP Securities then added to the range of present value of operational free cash flows per share an amount equal to $7.89 per share, which represents the estimated amount of cash of $121.4 million as of June 30, 2016 of United Online divided by the estimated number of shares of United Online common stock outstanding on a fully diluted basis as of June 30, 2016, as specified by United Online management. This analysis resulted in a range of value indications of $9.69 to $9.83 per share of United Online common stock.

75.     The Proxy is false and/or misleading due to the omissions identified in ¶73. The calculation of a discount rate requires the application of a number of objective inputs and assumptions and the ultimate discount rate selected often has the single largest impact on a resulting discounted cash flow ("DCF") valuation. Accordingly, United Online stockholders must be provided with sufficient information to determine the reasonableness of JMP Securities' discretionary use of the inputs and assumptions used to compute the selected discount rate range. Without the aforementioned omitted information, United Online stockholders cannot evaluate for themselves whether the analysis was performed properly and, in turn, determine what weight, if any, they should place on the analysis (and JMP Securities' fairness opinion as a whole) when deciding whether to vote to approve

the Proposed Acquisition.

76.     The description of JMP Securities' *Selected Companies Analysis* on pages 53-54 of the Proxy is materially deficient because it fails to disclose whether JMP Securities performed any type of benchmarking analysis for United Online in relation the selected companies.

77.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

JMP Securities reviewed and compared certain financial information for United Online to corresponding financial information, ratios and public market multiples for the following publicly traded corporations in the online and telecommunications services industries with similar growth profiles to that of United Online (collectively referred to as the selected companies):

- EarthLink Holdings Corp.
- Monster Worldwide, Inc.
- magicJack VocalTec Ltd.

Although none of the selected companies is directly comparable to United Online, the companies included were chosen because they are publicly traded companies with operations that for purposes of analysis may be considered similar to certain operations of United Online. JMP Securities calculated and compared various financial multiples and ratios based on estimates from Wall Street Research, the Forecast and market information, in each case as of (1) the undisturbed date (only for United Online) (November 13, 2015, which was the trading day prior to B. Riley's Schedule 13D filing in which B. Riley first publicly announced a proposal to acquire United Online) and (2) May 2, 2016.  With respect to each of the selected companies, JMP Securities calculated such company's enterprise value, which we

refer to as "EV," which is the market capitalization of such company that JMP Securities derived based on the closing price of the shares of the applicable company's common stock and the number of shares of common stock outstanding on a fully diluted basis based upon public information available as of May 2, 2016, plus the book value of debt less the book value of liquid cash and cash equivalents based upon public information available as of May 2, 2016, as a multiple of estimated revenue, and a multiple of estimated earnings before interest, taxes, depreciation and amortization (adjusted for certain non-recurring charges), which we refer to as "EBITDA," respectively, for calendar years 2016 and 2017, as provided by Wall Street Research. With respect to United Online, JMP Securities calculated EV as a multiple of estimated revenue and estimated EBITDA of United Online for calendar years 2016 and 2017 as provided by the Forecast. EV at the transaction price was $48.0 million, the price offered by B. Riley for the communications business. EV as of November 13, 2015 and May 2, 2016 was based on market capitalization derived from the closing price of United Online common stock on the applicable date and a fully diluted share count, plus the book value of debt and less the book value of liquid cash and cash equivalents as of the applicable date. Information regarding the fully diluted share count, the book value of debt, and liquid cash and cash equivalents was obtained from United Online management. The results of these analyses are summarized as follows:

| Enterprise Value as a multiple of: | Selected Companies as of 2-May-16 | | | United Online Forecast | | |
|---|---|---|---|---|---|---|
| | Range | Mean | Median | As of 15-Nov-15 | As of 2-May-16 | At Transaction Price |
| CY2016E Revenue | 0.2x - 1.1x | 0.6x | 0.5x | 0.5x | 0.7x | 0.7x |
| CY2017E Revenue | 0.2x - 1.2x | 0.6x | 0.5x | 0.7x | 0.9x | 0.9x |
| CY2016E EBITDA(1) | 0.8x - 5.0x | 3.1x | 3.4x | 2.7x | 3.3x | 3.5x |
| CY2017E EBITDA(1) | 0.7x - 5.2x | 3.0x | 3.1x | 2.4x | 2.9x | 3.1x |

(1)   EBITDA represented EBIT calculated as presented in United Online's financial statements and then adjusted for non-cash expenses, non-recurring expenses, one-time charge-offs, and non-operational expenses.

78.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶76 because such omissions are essential to stockholders' ability to properly evaluate the analysis performed by JMP Securities. Indeed, benchmarking metrics are used in the valuation process to help instruct the selection of pricing multiples based on the different levels of growth, profitability, etc., among the comparable companies selected.  No two companies are identical, and benchmarking plays an important role when incorporating the differences between companies into the valuation process.   Without the aforementioned information, stockholders' ability to understand JMP Securities' analysis is significantly limited, rendering them unable to make a fully-informed decision whether to vote to approve the Proposed Acquisition.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     During the relevant period, Defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

81.     By virtue of their positions within United Online, the Defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the Defendants. It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's and B. Riley's assets.  The Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

82.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

83.     By reason of the foregoing, the Defendants have violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

84.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violation of
### Section 20(a) of the Exchange Act

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     The Individual Defendants acted as controlling persons of United

Online within the meaning of section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of United Online and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

87.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

88.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of United Online, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition.  They were, thus, directly involved in the making of the document.

89.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Acquisition.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

90.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

91.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated

section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, United Online's stockholders will be irreparably harmed.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duties

92.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

93.    The Individual Defendants have violated the fiduciary duties of care, loyalty, and good faith owed to the public stockholders of United Online and have acted to put their personal interests ahead of the interests of United Online's stockholders.

94.    By the acts, transactions, and course of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and the other members of the Class of the true value of United Online.

95.    The Individual Defendants have violated their fiduciary duties by entering United Online into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on United Online's stockholders.

96.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required and breached their duty of loyalty owed to the stockholders of United Online because, among other reasons:

(a)    they failed to take steps to maximize the value of United Online to its public stockholders;

(b)    they failed to properly value United Online and its various assets and operations; and

(c)     they ignored or did not protect against the numerous conflicts of interests resulting from the Individual Defendants' own financial stakes in the Proposed Acquisition.

97.     Because the Individual Defendants control the business and corporate affairs of United Online, and have access to private corporate information concerning United Online's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of United Online that makes it inherently unfair for them to pursue and recommend the Proposed Acquisition wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

98.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary duties toward Plaintiff and the other members of the Class.

99.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the Class.

100.   As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of United Online's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

101.   Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT IV**

### **Against Defendants B. Riley and Merger Sub for Aiding and Abetting Breaches of Fiduciary Duty**

102.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.   Defendants B. Riley and Merger Sub knowingly assisted the Individual Defendants' breaches of fiduciary duties in connection with the Proposed Acquisition, which, without such aid, would not have occurred.   In connection with discussions regarding the Proposed Acquisition, United Online provided, and Defendants B. Riley and Merger Sub obtained, sensitive, non-public information concerning United Online, and thus had unfair advantages that are enabling defendant B. Riley to acquire the Company at an unfair and inadequate price.

104.   As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their United Online shares.

105.   As a result, Plaintiff and the Class members are being irreparably harmed.

106.   Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.   Declaring that this action is properly maintainable as a class action;

B.   Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until they comply with their obligations under sections 14(a) and 20(a) of the Exchange Act to provide stockholders with all material information about the unfair sales process for the Company, the conflicts of interest suffered by

Defendants in connection with the Proposed Acquisition, the inadequate consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company and B. Riley;

C.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

Dated: June 10, 2016                              ROBBINS ARROYO LLP
                                                 BRIAN J. ROBBINS
                                                 STEPHEN J. ODDO

                                                        /s/ Stephen J. Oddo
                                                 STEPHEN J. ODDO

                                                 600 B Street, Suite 1900
                                                 San Diego, CA 92101
                                                 Telephone: (619) 525-3990
                                                 Facsimile: (619) 525-3991
                                                 E-mail: brobbins@robbinsarroyo.com
                                                        soddo@robbinsarroyo.com

                                                 RYAN & MANISKAS
                                                 RICHARD A. MANISKAS
                                                 995 Old Eagle School Road, Suite 311
                                                 Wayne, PA 19087
                                                 Telephone: (484) 588-5516
                                                 Facsimile: (484) 450-2582
                                                 E-mail: rmaniskas@rmclasslaw.com

                                                 Attorneys for Plaintiff

1102375

**CERTIFICATION**

I, Dennis Palkon, ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary.  I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the **United Online, Inc. (NASDAQ: UNTD)** security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|---|
| Common | 5,000 | B | | 8/8/12 | $5.0599 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**(Please list additional purchase and sale information on a separate sheet of paper, if necessary)**

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below_____.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___4___ day of __June__, 2016.

_Dennis Palkon_
Dennis Palkon